FILED

2023 Oct-20  PM 06:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **CATHY ANN BRAGG,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  4:22-cv-00438-RDP** |
| } | |
| **KILOLO KIJAKAZI,** } | |
| **COMMISSIONER OF** } | |
| **SOCIAL SECURITY,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Cathy Bragg brings this action pursuant to section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI").  *See* 42 U.S.C. § 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

### A.      Procedural History

Plaintiff filed her application for SSI on November 29, 2018 alleging that her disability began on November 1, 2016. (R. 122, 202).  Plaintiff's application was initially denied by the Social Security Administration on March 15, 2019. (R. 134). Plaintiff then requested and received a hearing before Administrative Law Judge Sheila McDonald ("ALJ"). (R. 141). The hearing was held on February 6, 2020. (*Id.*).  Plaintiff, her attorney, and a vocational expert ("VE") were in attendance. (R. 70, 100).

In her decision dated March 6, 2020, the ALJ determined that Plaintiff had not been under a disability within the meaning of § 1614(a)(3)(A) of the Act since November 29, 2018, the date Plaintiff's application was filed. (R. 62).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (R. 1), that decision became the final decision of the Commissioner, and therefore, a proper subject of this court's appellate review.

Plaintiff was forty-five years old at the time of the hearing. (R. 74).  Plaintiff obtained a GED and attended college for two years but never received a college degree. (R. 75-76). Plaintiff did, however, receive a degree from an online ministry program. (R. 75). Plaintiff last worked in 2013. (R. 76, 219). Plaintiff alleges that she has been disabled since November 1, 2016 due to injuries sustained from a car accident. (R. 78, 219).  Additionally, Plaintiff stated that she suffers from side effects related to her pain medication, as well as depression. (R. 81, 88).

During the entire alleged period of disability, Plaintiff and her three children lived with her mother. (R. 77). When Plaintiff first moved into her mother's house, Plaintiff's father was still alive, but bedridden, and Plaintiff helped her mother take care of him until he passed away in November 2020. (*Id.*). Plaintiff's children, as of 2021, were ages four, seven, and eight.  At the time of the hearing, Plaintiff homeschooled all her children, and her mother helped with caring for them. (*Id.*). Plaintiff testified that her mother handled all the chores and cooking for her and the children. (R. 86-87). Plaintiff stated that she cannot sit upright for very long and has to recline when she is sitting. (R. 89). Plaintiff also stated that she can only stand for about five minutes and that she is not capable of lifting a 10 pound bag off of the floor. (R. 89, 90). Plaintiff further testified that she is unable to pick up her child but can dress herself and put on her shoes and can text using her cell phone. (R. 91-93).

Plaintiff was involved in a car accident on March 5, 2016. (R. 78). Plaintiff was admitted into UAB Hospital, (R. 78, 337), and Dr. Satinder Singh determined that Plaintiff had sustained a pelvic fracture, liver laceration, and lung puncture. (R. 78, 323, 348-49). Plaintiff was discharged from UAB on March 9 with a prescription for Oxycontin. (R. 327). Plaintiff returned to UAB on March 23 for a follow-up appointment. (R. 322). During that appointment, the examining physician, Dr. Luke Hiatt, determined that Plaintiff was healing properly, and no abnormalities were noticed. (R. 324-26). Dr. Hiatt's medical report also showed that Plaintiff had "minimal pain" and "no complaints" during the follow-up. (R. 324). Plaintiff was provided no further Oxycontin prescriptions during this appointment (R. 322).

Plaintiff stated that after her prescription of Oxycontin ended, she began "taking it on [her] own" and "would take over-the-counter" because she "was still hurting." (R. 78-79). Plaintiff stated that, after taking over-the-counter drugs for some time, she began to worry that she was becoming overly dependent on pain medications and decided to admit herself into a Suboxone program. In December 2018, Plaintiff was admitted into the Suboxone program at Quality of Life medical center where she was prescribed Suboxone by Dr. Artie Nelson. (R. 78-79, 365, 384, 388). At the time of the hearing, Plaintiff had been taking Suboxone for approximately a year. (R. 79-80).

On February 4, 2019, Plaintiff was diagnosed with Hepatitis C by Dr. Herrera at Quality of Life and was prescribed medications to treat that condition. (R. 372, 389, 391, 394). On July 11, 2019, Plaintiff was also diagnosed with depression at Quality of Life by Dr. Christopher Randolph and was prescribed medications for that. (R. 81-82, 88, 538, 543, 546, 547).

On March 13, 2019, during an examination, Dr. Herrera at Quality of Life completed a form provided by Plaintiff's attorneys that described his opinion of Plaintiff's "physical

capacities." (R. 60, 421). Dr. Herrera noted that Plaintiff needs to rest with her legs elevated for at least six hours in total during working hours. (R. 421). He further noted that Plaintiff is only capable of standing for 15 minutes and sitting upright for 30 minutes and found that Plaintiff would need to miss 15 days of work during a 30-day work period. (*Id.*).

A similar form describing Plaintiff's "mental health" was completed on December 12, 2019 by Dr. Randolph. (R. 60, 544-45, 554). The form stated that Plaintiff is incapable of interacting with coworkers and would need 8 days off from work during a 30-day work period. (R. 554).

Plaintiff was also examined on March 9, 2019 by Dr. Iyer in response to a request by the Disability Determination Service. (R. 416). Dr. Iyer evaluated Plaintiff's mobility and general health. (R. 416-18). Dr. Iyer found that Plaintiff has "full range of motion of neck, shoulders, elbows, and wrists and stated in his report that Plaintiff has "[l]ower back pain with decreased range of motion" and "[p]ossible degenerative joint disease of the lumbar spine." (R. 417-18).

On August 21, 2019, Plaintiff visited the Marshal Medical Center where she was tested by rheumatologist Dr. Randall Beyl, Jr. (R. 567). Dr. Beyl determined that Plaintiff has a positive R.A. factor and degenerative arthritis. (R. 84, 567). Plaintiff stated that Dr. Beyl prescribed her Klonopin but said that she never took it. (R. 83). Plaintiff was also prescribed Plaquenil by the Rheumatology clinic. (R. 84).

During Plaintiff's first visit to Marshal Medical Center, imaging tests were done on Plaintiff's hands. (R. 567, 575). Dr. Beyl stated that "[n]o osseous abnormality" was apparent with Plaintiff's hands. (*Id.*). On January 2, 2020, imaging tests of Plaintiff's pelvis and lower back were also conducted at the Marshal Medical Center. (R. 562). The examining doctor, Dr. James McAlister, noted "[d]egenerative changes" and "[n]o acute osseous [sic] abnormality." (R. 562, 564).

As part of Plaintiff's disability application, Plaintiff's medical record was examined by Dr. Amason on March 15, 2019. (R. 130, 132). Dr. Amason reviewed all the medical reports provided by Plaintiff, including Dr. Iyer's, which had only been submitted a few days prior. Dr. Amason determined that Plaintiff did not meet the statutory standard of disabled. (R. 131). Dr. Amason further opined that Plaintiff is capable of light level work and was not limited to unskilled labor. (*Id.*).

## II.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572.  "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability.  *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  *Id.* § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must

first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  *Id.* § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  *Id.* § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 2019, thus satisfying step one of the analysis. (R. 55).  At step two, the ALJ determined that Plaintiff has the severe impairments of "degenerative disc disease, status post fractured pelvis, and fibromyalgia." (*Id.*). The ALJ noted that Plaintiff has other medical issues, including Hepatitis C, but stated that these conditions did not cause "substantial limitations." (*Id.*).  The ALJ also addressed Plaintiff's alleged mental disabilities. (R. 56). The ALJ determined that while Plaintiff claims to have difficulty in "remembering generally, understanding, and following directions," these claims were contradicted by the fact that she is able to "pay bills, go to doctor's appointments, take medications, shop, drive, and read." (*Id.*).  In a similar line of reasoning, the ALJ explained that while Plaintiff claimed to have "difficulty in engaging in social activities," she revealed in her testimony that she "attend[s] church online" and that the medical reports described her interactions with medical staff as "pleasant and cooperative." (*Id.*).

The VE characterized Plaintiff's past work as light work. (R. 95). The VE found that someone of Plaintiff's age, education, work experience, and health limitations could work as a small parts assembler or as a laundry folder. (R. 94-96). The VE testified that an individual of Plaintiff's age, education, and work history that could only maintain concentration for two hours would be unable to perform any work in the national economy. (R. 99). She also stated that a hypothetical person who had very limited dexterity with their hands would not be able to perform any work in the national economy. (*Id.*). The VE opined that to perform the light work job she identified for Plaintiff, Plaintiff would only be allowed one absence each month and could only be off-task for 10% of the time. (*Id.*).

At step three, the ALJ determined that Plaintiff does not meet any of the listed impairments found in 20 C.F.R. § 416.920(d). (R. 57).  At step four, the ALJ examined Plaintiff's entire medical record and determined that Plaintiff is capable of performing light work as defined in 20 C.F.R. § 416.967(b). (R. 58).  The ALJ then completed her analysis by stating that Plaintiff has no past relevant work that she could engage in, but the testimony of the VE revealed that Plaintiff can find employment as a small parts assembler or a laundry folder. (R. 61-62).  The ALJ concluded that Plaintiff has not been disabled since November 2019. (R. 62).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. (Doc. 17, p. 28).  Plaintiff first argues that the ALJ did not properly consider the medical opinions of Dr. Herrera and Dr. Randolph. (Doc. 17, p. 16-25). Plaintiff next argues that the ALJ improperly considered the affidavit of her mother which described her physical capabilities. (Doc. 17, p. 25-26).  Finally, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Iyer. (Doc. 17, p. 26-27).

In her reply brief, Plaintiff departed from her earlier stance that this court should apply the substantial standard of review and instead raises a new argument that the *de novo* standard should apply. (Docs. 17, p. 15-16; Doc. 22, p. 1-3).  Aside from the argument that *de novo* should apply, no other new arguments were raised in Plaintiff's reply brief, and all previous arguments were restated. (Doc. 22, p. 3-11).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is

limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

For the sake of organization, the court has categorized its discussion of Plaintiff's main arguments as follows: (A) The standard of review should be *de novo* and not substantial evidence; (B) the ALJ improperly considered the medical opinions of Dr. Herrera and Dr. Randolph; (C) the ALJ improperly considered the affidavit of Plaintiff's mother; and (D) the ALJ improperly considered the medical opinion of Dr. Iyer.

### A.     Whether the Standard of Review is *de novo* or Substantial Evidence

In her reply brief, Plaintiff argues that the standard of review this court should apply is *de novo* (despite initially citing to the substantial evidence standard in her original brief). (Doc. 22, p. 1-2; Doc. 17, p 15-16).  Plaintiff argues that because the issue this court is considering is whether the ALJ properly applied the correct law, a *de novo* review is the appropriate standard that this court should apply. (Doc. 22, p. 2).

While Plaintiff's reasoning may very well be correct in a different context, the instant case involves judicial review of an administrative decision. *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x. 839, 841 (11th Cir. 2013). Whether Plaintiff meets the Listing and qualifies for Social Security benefits under the Act is a question reserved for the ALJ. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth*, 703 F.2d at 1239).  This court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The court's review of the ALJ's decision is limited to whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Wilson*,

284 F.3d at 1221. Nevertheless, with respect to Plaintiff's legal (as opposed to factual) arguments, the question is whether the correct legal standards were applied by the ALJ. (Doc. 17, p. 26-27).

**B.     The ALJ's Consideration of Dr. Herrera and Dr. Randolph's Opinions Is Proper**

A large portion of Plaintiff's argument revolves around the medical opinions of Dr. Herrera and Dr. Randolph, and whether the ALJ gave them proper weight during her evaluation of the medical record. (Doc. 17, p. 16-25).  Plaintiff first argues that the ALJ's evaluation of Dr. Herrera and Dr. Randolph's opinions was based solely on the documents' format and not on the supportability and consistency of the opinions. (Doc. 17, p. 19-21).  Plaintiff next argues that even if this court finds that the ALJ did base her determination about the opinions on a lack of supportability and consistency, this finding is not supported by the evidence. (Doc. 17, p. 21-24). Plaintiff also argues that the ALJ did not articulate whether she found the opinions to be consistent with the record. (Doc. 17, p. 22).  And, Plaintiff also contends that the ALJ's improper evaluation of the opinions was more than harmless error because she would have been found to be disabled had the ALJ not disregarded Dr. Herrera and Dr. Randolph's opinions. (Doc. 17, p. 24-25).

**1.     The ALJ Did Not Base Her Relevant Evaluation on the Medical Opinion Form**

Plaintiff argues for reversal or remand contending that the ALJ disregarded the medical opinions of Dr. Herrera and Dr. Randolph "based on the format of the opinion" and not on the supportability and consistency of the opinions. (Doc. 17, p. 20).  In support of this argument, Plaintiff points to the ALJ stating that "[s]he disregarded the opinions because the opinions were on a form that was "created by the [Plaintiff]'s attorney and consist of a series of questions which … merely seek 'yes' or 'no' answers." (Doc. 17, p. 19).

When an ALJ articulates her rationale for evaluating the medical record in an opinion, the ALJ is required to "articulate … how persuasive [she] find[s] all of the medical opinions." 20 C.F.R. § 416.920c(b).  When explaining how she determined the persuasiveness of the medical opinion, the ALJ must "explain how [she] considered the supportability and consistency factors for a [medical opinion]." 20 C.F.R. § 416.920c(b)(2). In *Schink v. Commissioner of Social Security*, which Plaintiff argues is analogous to the instant case, the Eleventh Circuit stated, "[T]he ALJ cannot reject that opinion simply because it is not in a particular format." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1261 (11th Cir. 2019); (Doc. 17, p. 19). This rule is of course supported also by the Regulations because document format has no bearing on the supportability and consistency of the medical opinion. 20 C.F.R. § 416.920c(b)(2).

Plaintiff alleges that her case is akin to *Schink* where the ALJ's decision was reversed. *Schink*, 935 F.3d at 1270; (Doc. 17, p. 20).  That is, she argues that just like the ALJ in *Schink*, the ALJ in this case has disregarded medical opinions based on their format. *Id.* In *Schink*, however, the Eleventh Circuit makes clear that the problem with the ALJ's decision in that case is that there was "no other evidence counter[ing] the [medical] opinion." *Schink*, 935 F.3d at 1261. The court in *Schink* described how the medical opinions that were disregarded contained notes that "fleshed out" and "supported" the form that the ALJ had disregarded and how the notes "were consistent with their conclusions." *Id.*

Unlike *Schink*, here, the ALJ made clear that she was disregarding the medical opinions because they "provide little narrative and are devoid of insight into the reasons behind the conclusions." (R. 60). Indeed, it is readily apparent from reading the ALJ's opinion that she found Dr. Herrera and Dr. Randolph's opinions unpersuasive due to their lack of "supportability and consistency" and not merely because of the "format" as Plaintiff alleges. 20 C.F.R. §

416.920c(b)(2); (R. 60; Doc. 17, p. 19-20).  Therefore, this court finds that the ALJ followed the correct legal standard in considering and rejecting the medical opinions of Dr. Herrera and Dr. Randolph unpersuasive.

>        **2.     There is Substantial Evidence that Dr. Herrera and Dr. Randolph's Opinions Lack Supportability**

Although not clearly stated, Plaintiff essentially argues that even if this court determines that the ALJ disregarded Dr. Herrera and Dr. Randolph's opinions based on a lack of supportability, there is not enough substantial evidence to back the ALJ's decision. (Doc. 17, p. 21-22).  It is therefore this court's responsibility to determine whether there was sufficient evidence supporting the ALJ's finding that the opinions lacked supportability. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

Among the strongest evidence for a lack of supportability is simply the lack of pages and content within Dr. Herrera and Dr. Randolph's opinions. (R. 421, 554).  The ALJ described the opinions as having "little narrative." That certainly is an accurate description considering that both opinions hardly contain anything more than a few fill-in-the-blank or circle-the-answer questions and are both one page in length. (R. 60, 421, 554). The bottom of these forms provides a little space for written responses, but hardly anything was written in these spaces. (R. 421, 554).

The ALJ also assessed the UAB medical opinions and found those persuasive. (R. 59). The UAB medical opinions contain at least some narrative to go along with each report. In contrast, Dr. Herrera and Dr. Randolph's opinions contain less than a dozen words in each. (R. 326, 328, 340, 421, 554).  Doctors are of course busy professionals with many patients to attend to and they cannot always be expected to draft thorough essays for every medical opinion. But, some written explanation should be expected. Thus, this court quite easily concludes that there is substantial evidence to support the ALJ's decision.

### 3. There is Substantial Evidence Supporting the ALJ's Finding that Dr. Herrera and Dr. Randolph's Opinions Lacked Consistency

Plaintiff next argues that Dr. Herrera and Dr. Randolph's opinions are both "consistent with the record." (Doc. 17, p. 23-24). While this court cannot reevaluate the evidence, it is the court's responsibility to determine whether there is substantial evidence to support the ALJ's decision in finding both opinions inconsistent. *See* 42 U.S.C. § 405(g); *Walden*, 672 F.2d at 838.

### i. There is Substantial Evidence that Dr. Herrera's Opinion is Inconsistent with the Medical Record

The first medical report that is inconsistent with Dr. Herrera's opinion is the medical report from UAB following the car accident in 2016. (R. 322-60).  As the ALJ noted, when Plaintiff returned to UAB a few weeks after the car accident for a check-up appointment, the examining physician noted that Plaintiff's torso was "[w]eight [b]earing as [t]olerated," and stated that Plaintiff had "[m]inimal complaints of pain." (R. 59, 322, 324).  An image taken during the check-up of Plaintiff's pelvis showed that the bones were "well-seated," "unchanged in alignment," and "no new fracture or skeletal abnormality [was] identified." (R. 325-26).  In other words, it appears that Plaintiff healed properly following the car accident, and there is no medical basis for why her mobility should later have been limited.  The UAB report flatly contradicts the opinion of Dr. Herrera who stated that Plaintiff could only stand for 15 minutes and sit in a chair for only 30 minutes. (R. 421).

The ALJ also looked at the report by Dr. Iyer, which also contradicts Dr. Herrera's opinion. (R. 59). Dr. Iyer tested about Plaintiff's flexibility and found that Plaintiff had a normal range of motion. (R. 419-20). As Dr. Iyer observed, "[Plaintiff] could have impairment of functions involving bending, lifting, pushing, pulling, and overhead activities. She does not appear to have any other significant physical limitations." (R. 418).  Dr. Iyer's report does not support a finding

that Plaintiff was incapable of standing for more than 15 minutes or sitting for more than 30 minutes, as Dr. Herrera's opinion concluded. Thus, Dr. Iyer's opinion clearly contradicts Dr. Herrera's opinion. The court finds that there was substantial evidence supporting the ALJ's finding that Dr. Herrera's opinion was inconsistent with the rest of the medical record.

### ii. Dr. Randolph's Opinion is Inconsistent with the Remainder of the Medical Record

The evidence that most strikingly contradicts Dr. Randolph's opinion does not come from other medical opinions but from the testimony and activities of Plaintiff herself. As the ALJ explained in her opinion, Plaintiff revealed through her testimony that she could

> "perform household chores, care for her children and pets, prepare meals, pay bills, go to doctor's appointments, take medications, shop drive and read[,] … provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, … respond to questions from medical providers[,] … able to get along with others, shop, spend time with friends and family, attend church online, deal appropriately with authority, and live with others … [F]inally the medical evidence shows that [Plaintiff] was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments."

(R. 56, 80-81, 87). Comparing all these activities to Dr. Randolph's report, which states that Plaintiff cannot interact with co-workers or supervisors, reveals that there is almost no consistency to be found between Plaintiff's own testimony and Dr. Randolph's view. (R. 554). Thus, this court finds that there was substantial evidence supporting the ALJ's finding that Dr. Randolph's opinion was inconsistent with the medical record.

### 4. The ALJ Addressed the Consistency of Dr. Herrera and Dr. Randolph's Opinions

Plaintiff also argues that the ALJ failed to articulate whether she considered the consistency of Dr. Herrera and Dr. Randolph's opinions. (Doc. 17, p. 22). While it is true that the ALJ did not use the word 'consistent' in her discussion of the opinions, the ALJ did note (as to both opinions)

that "there does not appear to be any objective determination regarding limitations." (R. 60-61). As the Commissioner explained in briefing, this shows the ALJ found there was "no objective evidence or other support for those [opinions] from other evidence in the record." (Doc. 21 p. 8).

It is also significant that the ALJ began her next paragraph (addressing Dr. Iyer's medical opinion) with, "The opinion of Dr. Iyer is consistent." (R. 61). The ALJ found Dr. Iyer's medical opinion more persuasive than Dr. Herrera and Dr. Randolph's opinions because, unlike the opinions of Dr. Herrera and Dr. Randolph, it is consistent with other evidence. Further, before addressing Dr. Herrera and Dr. Randolph's opinions, the ALJ discussed the opinion of Dr. Amason. (R. 60). In that discussion, the ALJ stated that Dr. Amason's opinion "was consistent." *Id.* In other words, by looking at the ALJ's opinion as a whole, it is clear that she did not suddenly forget to consider consistency with Dr. Randolph and Dr. Herrera's opinions, as Plaintiff argues. Instead, the ALJ's discussion indicates that consistency was considered alongside supportability. (R. 60-61).

### 5.   There is No Need to Consider Whether the ALJ's Disregard of Dr. Herrera and Dr. Randolph's Opinions Was Harmless Error

Plaintiff contends that the ALJ's improper consideration of the opinions of Dr. Herrera and Dr. Randolph were more than harmless error, and therefore this court should reverse the ALJ's decision. (Doc. 17, p. 24). There is no need, however, to address whether there was harmless error because this court has found that the ALJ properly considered the opinions, and there was substantial evidence backing the ALJ's decision to find them unpersuasive. There was no error – harmless or otherwise.

### C.   The ALJ Properly Considered the Affidavit by Plaintiff's Mother

Plaintiff argues that the ALJ did not afford proper weight to the affidavit from Plaintiff's mother, which the ALJ described as "inherently neither valuable nor persuasive." (Doc. 17 p. 25-

26; Tr. 60, 265).  Plaintiff contends that the law only "identifies three categories of evidence that are 'inherently neither valuable nor persuasive.'" (Doc. 17, p. 26 (quoting Tr. 60)). She then quotes the law which states that those categories are "decisions by other governmental agencies," "disability examiner findings," and statements as to whether the applicant meets the legal standard of disabled. (*Id.*) (quoting 20 C.F.R. § 416.920b(c)).

Plaintiff is correct that the ALJ cited the incorrect law, but careful review shows that the ALJ still followed the correct legal standard.  The law states that when discussing nonmedical sources in the record, the ALJ is "not required to articulate how [she] considered evidence from [them]." 20 C.F.R. § 416.920c(d). In this case, the ALJ correctly states that she "did not provide articulation about the evidence" because she was not required to do so. (R. 60); 20 C.F.R. § 416.920c(d).

Plaintiff also argues that the ALJ "tipped her hand" in stating that the claim is "neither valuable," and alleges that the ALJ all but stated that the affidavit had "no value." (Doc. 22, p. 9). The court disagrees with this interpretation.  The ALJ was not talking about the affidavit when she said "neither valuable" but was instead quoting the Regulations. (R. 60).  This is made clear in the context of the ALJ's discussion – the ALJ addressed the affidavit itself in the next sentence in her opinion and stated, "I did … review and consider this [affidavit]." (R. 60).

Again, as related to nonmedical sources, the ALJ is only required to "consider" them. 20 C.F.R. § 416.920(a)(3). As this court has already explained, the ALJ did not have to articulate "how" she considered the affidavit. 20 C.F.R. § 416.920c(d). Thus, by stating that she did "review and consider" the affidavit, the ALJ met the legal standard related to her consideration of the affidavit. (R. 60).

**D.      The ALJ Followed 20 C.F.R. § 416.920c in Evaluating Dr. Iyer's Opinion**

Plaintiff's final argument centers on her contention that the ALJ did not provide any statement "as to the persuasiveness of the Iyer Opinion," as required by the Regulations. (Doc. 17, p. 27); 20 C.F.R. § 416.920c(b). In her decision, the ALJ stated that she "chose[] to rely more heavily on the objective findings noted in the examination." This statement clearly shows that the ALJ found parts of Dr. Iyer's medical report more persuasive than the opinions of others. (R. 61). Plaintiff also alleges that "there is no discussion of the 'consistency' of the Iyer Opinion." (Doc. 17, p. 27) (quoting 20 C.F.R. § 416.920c(b)(2)). But this assertion misses the mark.  The ALJ stated in her decision that, "The Opinion of Dr. Iyer is consistent." (R. 61).

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this October 20, 2023.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE